```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION

GDI, LLC,                       )
                                )
            Plaintiff,          )
                                )
      v.                        )    No. 10 C 4946
                                )
GALLAGHER SECURITY (U.S.A.),    )
INC., et al.,                   )
                                )
            Defendants.         )
```

## MEMORANDUM OPINION AND ORDER

GDI, LLC ("GDI") is hoist by its own petard, having doomed this action by its conduct of an earlier state court lawsuit involving the identical subject matter. Here in brief is the history of that earlier lawsuit that operates to bar this one on grounds of claim preclusion (and, it may be, issue preclusion as well--but in light of the ensuing analysis on the issue of claim preclusion, the subject of any potential issue preclusion can be deferred for possible future consideration):[1]

    1. On October 31, 2008 GDI sued its ex-employee Elliot Rose ("Rose") in the Circuit Court of DuPage County for the asserted breach of his fiduciary duties under an employment agreement. That Complaint charged Rose's activities (a) in

---

[1] This Court's brief January 13, 2011 memorandum order that directed the parties to provide supplemental input included, as its footnote 1, an explanation of this Court's preference for avoiding the old generic label of "res judicata" in favor of the more precise preclusion concepts just employed in the text. And as explained hereafter, the greater desirability of that preferred vocabulary is well illustrated by the situation here.

accepting employment with Gallagher Security (U.S.A.), Inc. ("Gallagher"),[2] (b) in assertedly taking GDI's confidential information with him and (c) in soliciting another GDI employee, Michael Provencher ("Provencher") to join Gallagher not only breached Rose's employment agreement but misappropriated GDI's trade secrets as well.

2.  In February 2009 GDI's counsel joined Gallagher as a codefendant in that state court lawsuit, expanding the allegations in that case to grounds that were closely linked to (indeed, in some respects identical to) the claims GDI now advances in this action.

3.  Earlier in that same month of February 2009, the state court had issued a letter opinion that held the restrictive covenant in Rose's employment agreement with GDI was "unenforceable and unreasonable as a matter of law," therefore granting judgment on the pleadings against GDI in that respect. In the same opinion the state judge found that the existence of some contested factual issues precluded a ruling on the trade secrets claim as a matter of law.

4.  On December 21, 2009 GDI voluntarily dismissed

---

[2] GDI has sued both Gallagher and its parent corporation Gallagher Group, Ltd. in this action. Because there appears to be no basis for suing the parent corporation, this opinion will speak only of the subsidiary as "Gallagher."

Gallagher from the state court action, and GDI then voluntarily dismissed its lawsuit against Rose in May 2010.

Illinois preclusion law, which of course controls as to the effect of that history, could not be more clear.[3] Although the dismissals of Gallagher and then Rose were stated to be "without prejudice," the teaching of Muhammad v. Oliver, 547 F.3d 874, 876-77 (7th Cir. 2008) in that regard is plain indeed:

> But when a suit is abandoned after an adverse ruling against the plaintiff, the judgment ending the suit, whether or not it is with prejudice, will generally bar bringing a new suit that arises from the same facts as the old one. "[A] plaintiff who splits his claims by voluntarily dismissing and refiling part of an action after a final judgment has been entered on another part of the case subjects himself to a res judicata defense." Hudson v. City of Chicago, 228 Ill.2d 462, 321 Ill.Dec. 306, 889 N.E.2d 210, 217 (2008). When a "final judgment rendered in an action extinguishes the plaintiff's claim," in this case against CDA, which the judge had dismissed from the case en route to entering the final judgment dismissing the entire case, "the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction...out of which the action arose." Restatement (Second) of Judgments §24(1)(1982).

This Court's comparison of GDI's claims that were advanced in its voluntarily dismissed state court lawsuit with those that it seeks to litigate here reveals that both actions grow out of the same congeries of operative facts. They share GDI's position

---

[3] Because this opinion is devoted solely to analysis of the preclusion question, it eschews addressing Gallagher's several substantive challenges to GDI's Second Amended Complaint ("SAC"), matters that are covered in Part III of Gallagher's supporting memorandum of law, Mem. 9-15.

3

that Rose retained information on a GDI-owned computer after the termination of his employment, that he gave that allegedly "confidential" information to Gallagher, that he deleted the information from the computer that he returned to GDI and that as a Gallagher employee he solicited both GDI customers and another GDI employee (Provencher). As to the latter, Gallagher is charged with having hired him in April 2009 (while Gallagher was still a target of GDI's state court lawsuit), and he is in turn charged with having taken his own GDI-issued laptop with him and with having engaged in the identical type of conduct that GDI has ascribed to Rose.

To focus on the SAC, its entire "Fact Background" (SAC ¶¶14-56) attributes identical conduct on Gallagher's part as to both Rose and Provencher, with the latter's activities dating from April 1, 2009 when he became a Gallagher employee on leaving GDI. And it will be recalled that during that identical time frame GDI had Gallagher as well as Rose in its sights as codefendants in the state court lawsuit. And remember as well that the state court held the restrictive covenant in the Rose-GDI employment contract (identical to that in the Provencher-GDI employment contract) to be unenforceable, while the state court judge left open the alleged violation of trade secrets and confidential information by Gallagher in conjunction with Rose because some factual issues precluded summary judgment on that score.

4

This is the prototypical stuff of which a <u>Muhammad</u> brand of claim preclusion is fashioned. When GDI voluntarily abandoned its state court lawsuit, first against Gallagher and then against Rose, it became barred not only as to all claims that it had advanced in that lawsuit (including, for example, the charged trade-secret-violative activity) but also as to all those it <u>could</u> have advanced there (surely including claims of Gallagher's purported misconduct both vis-a-vis Provencher and also assertedly in cahoots with him as well as Rose). It is unnecessary to go beyond the "Fact Background" to see that Gallagher's purported misconduct in conjunction with Rose and its purported misconduct in conjunction with Provencher are really as alike as Tweedledum and Tweedledee.

All of that is classic grist for the claim preclusion mill, foreclosing any current action based on the Gallagher-Provencher relationship (which GDI <u>could have</u> litigated in its state court lawsuit) as well as on the Gallagher-Rose relationship (which Gallagher <u>did</u> litigate there). And GDI really has no answer to what has been said up to this point. Instead it seeks to retreat to a position exemplified by the over-half-century-old opinion in <u>Lawlor v. Nat'l Screen Serv. Corp.</u>, 349 U.S. 322, 328 (1955):

> The conduct presently complained of was all subsequent to the 1943 judgment....While the 1943 judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case.

5

And on that score GDI attaches an affidavit of its President Andrew Gilmour that adverts to a number of things that he says have taken place during 2010.

Little wonder that this Court's January 13, 2011 memorandum order, which directed the parties to provide additional input, characterized GDI's response to that date as "somewhat oversimplistic." To begin with, what Gilmour has now come up with is nowhere to be found in the SAC that the parties and this Court have been addressing. But even apart from that deficiency, which might perhaps be cured by GDI's counsel's return to the drawing board to tender a Third Amended Complaint, it ignores some fundamental facts and their legal impact.

For one thing, there is no question that in the context of the present litigation Rose and Gallagher are in privity with each other. All matters on which GDI sued or could have sued in its state court lawsuit are out of bounds on preclusion grounds. Yet in the face of a final unappealed state court determination that GDI's employment contract with Rose was unenforceable, it attempts to relitigate that selfsame issue here, as well as urging that its <u>identical</u> contract with Provencher is somehow valid and enforceable. And once again it will be remembered that the assertedly illegal conduct that GDI now attempts to ascribe to Gallagher and Provencher originated at a time in 2009 when (1) GDI had Gallagher in the crosshairs of its state court

6

lawsuit and (2) it was well aware of the Provencher-Gallagher linkage and of Provencher's asserted conduct paralleling Rose's.

This Court will not countenance GDI's effort at game-playing. Gallagher's most recent submission (its Supplemental Memorandum in Support of Defendants' Motion To Dismiss) has not only trashed the SAC as unsupported by the Gilmour affidavit as to later-occurring events but also invokes what it calls the Illinois "transactional test" set out in such cases as <u>River Park, Inc. v. City of Highland Park</u>, 184 Ill.2d 290, 703 N.E.2d 883 (1998) and <u>Doe v. Gleicher</u>, 393 Ill.App.3d 31, 911 N.E.2d 532 (1st Dist. 2009). Under that standard GDI's 2010 "discoveries" simply reflect more manifestations of conduct that it is foreclosed from challenging as illegal by reason of its earlier state court lawsuit and the doctrine of claim preclusion.

In sum, GDI has certainly not shown its entitlement to remain in court on the strength of its SAC. Moreover, it may well be barred entirely from going forward here as a result of the self-inflicted wound created by its abandoned state court action, but it seems too early to reach a definitive conclusion on that score.

Accordingly Gallagher's motion to dismiss the SAC is granted, but out of what may be an overabundance of caution this Court will consider the possibility that GDI's counsel may seek to come forward promptly with an arguably viable Third Amended

7

Complaint that might cure the defect identified here as well as the substantive problems identified in Gallagher's motion to dismiss. This action is set for a status hearing at 8:45 a.m. February 17, 2011 to discuss the future course of this litigation.

				_____
				Milton I. Shadur
				Senior United States District Judge

Date:  February 9, 2011